[Cite as *State v. Corder*, 2012-Ohio-1995.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 10CA42 |
| v. | : | |
| | : | DECISION AND |
| James E. Corder, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Filed: April 27, 2012 |

_____

APPEARANCES:

Bryan M. Griffith, Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A. Columbus, Ohio, for Appellant.

James Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.

_____

Kline, J.:

**{¶1}** James Corder appeals the judgment of the Washington County Court of Common Pleas, which convicted him of two counts of aggravated trafficking in violation of R.C. 2925.03(A)(1) & (C)(1)(a). Corder contends that there was insufficient evidence to convict him based on alleged breaks in the chain of custody of an Adderall pill he provided to a confidential informant. Corder, however, improperly frames his argument as a sufficiency-of-the-evidence challenge when it is actually a manifest-weight-of-the-evidence challenge. Because the jury did not lose its way when it found Corder guilty of aggravated trafficking, we disagree with Corder's manifest-weight-of-the-evidence challenge. Corder's argument also implies that the trial court improperly admitted the Adderall pill into evidence. Because the trial court did not abuse its discretion when it

admitted the Adderall pill into evidence, we disagree with Corder's evidentiary challenge.  Next, Corder argues that he suffered from ineffective assistance of trial counsel because his trial counsel failed to object to admission of the Adderall pill based on the chain-of-custody issues.  Because Corder cannot show that his trial counsel's performance was deficient, we disagree.  Next, Corder argues (1) that his six-month jail sentence was contrary to law and (2) that the trial court abused its discretion when it found that his offense was part of "organized criminal activity."  Because a six-month jail sentence is an authorized community control sanction, we disagree with Corder's argument that his sentence was contrary to law.  Also, because there was evidence in the record indicating that Corder's conduct was part of organized criminal activity, we disagree with Corder's assertion that the trial court abused its discretion in making this finding.

{¶2} Accordingly, we affirm the judgment of the trial court.

I.

{¶3} A jury found Corder guilty of two counts of aggravated trafficking in violation of R.C. 2925.03(A)(1) & (C)(1)(a).  Corder's offenses stem from two occasions where he either offered or provided Adderall, a schedule II substance, to a confidential informant (hereinafter the "Informant"), who was working with the Washington County Sheriff's Office.

{¶4} The Informant agreed to wear a wire while attempting to purchase drugs from Corder.  The Informant visited Corder on October 29, 2007.  During the visit, the Informant repeatedly asked Corder for cocaine.  Corder, however, did not provide her with cocaine.  Instead, he offered her Adderall, which Corder explained was "just like

coke." Trial Tr. at 265. The Informant declined Corder's offer of Adderall because she did not know what it was, and she was not sure if law enforcement wanted her to purchase it instead of cocaine. (Law enforcement later advised the Informant that she could obtain Adderall as part of her work with the sheriff's office.)

{¶5} The Informant visited Corder again on January 12, 2008. During this visit, Corder again offered the Informant Adderall. This time, the Informant accepted a pill of Adderall from Corder. The Informant then turned the pill over to Detective Carrie Smithberger of the Washington County Sheriff's Office.

{¶6} At trial, the Informant's recorded conversations with Corder were played to the jury, and, as indicated above, the jury found Corder guilty of two counts of aggravated trafficking. The trial court sentenced Corder to five years community control. The trial court also ordered Corder to serve six months of confinement in the Washington County Jail.

{¶7} Corder appeals and asserts the following assignments of error: I. "THE TRIAL COURT ERRED BY ALLOWING A CONVICTION TO STAND WHERE THERE WAS INSUFFICIENT EVIDENCE OF A COMPLETE CHAIN OF CUSTODY FOR THE 'PILL.'" II. "TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10, 16 OF THE OHIO CONSTITUTION." And, III. "APPELLANT'S SENTENCE WAS CLEARLY AND CONVINCINGLY CONTRARY TO LAW AND CONSTITUTED AN ABUSE OF DISCRETION."

II.

{¶8} In his first assignment of error, Corder argues that there was insufficient evidence supporting his aggravated trafficking conviction because the evidence of the chain of custody for the pill was incomplete. Initially, we note the pill Corder refers to was the state's Exhibit A at trial. The state argued that Exhibit A was the Adderall pill that Corder gave to the Informant on January 12, 2008.

{¶9} We also note that Corder improperly frames his argument as a sufficiency-of-the-evidence challenge rather than a manifest-weight-of-the-evidence challenge. "[A] break in the chain of custody goes to the credibility or weight of the evidence, and not its admissibility[.]" *State v. Bias*, 5th Dist. No. 02-CA-00044, 2002-Ohio-4539, ¶ 12. Therefore, "chain of custody is not an appropriate consideration on a claim that the State presented insufficient evidence to allow a rational trier of fact to find the elements of the crime proven beyond a reason[able] doubt." *Id.*

{¶10} Moreover, Corder argues as follows: "[The] breaks in the chain of evidence, particularly the physical alteration of the evidence, rise to a level beyond a mere clerical error going to the weight of the evidence. The chain of evidence fails to establish a relevant connection to the Defendant Mr. Corder, and *should have been excluded at trial*." (Emphasis added.) Appellant's Merit Brief at 12. Implicit in Corder's argument is both (1) a manifest-weight-of-the-evidence challenge and (2) an argument that the trial court improperly admitted Exhibit A.

{¶11} We will infer from Corder's argument that he claims that Exhibit A was not properly authenticated, and, therefore, the trial court erred by admitting it. Thus, we will first analyze Corder's challenge to the admissibility of Exhibit A, and then, if necessary,

we will analyze Corder's manifest-weight-of-the-evidence challenge based on the chain of custody of the pill.

**{¶12}** Finally, we note that Corder concedes that we should review his argument under a plain-error standard based on his trial counsel's failure to object at trial. Corder's concession, however, is unnecessary. Corder's trial counsel did object to the admission of Exhibit A, and trial counsel advanced many of the same arguments that Corder now asserts on appeal. Therefore, we need not review Corder's arguments for plain error only.

A. Authentication

**{¶13}** Corder's argument implies that the breaks in chain of custody for the Adderall pill were such that Exhibit A should not have been admitted into evidence.

**{¶14}** "'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[,]' and we may not reverse unless there has been an abuse of that discretion." *State v. Boyd*, 4th Dist. No. 09CA14, 2010-Ohio-1605, ¶ 27, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶15}** "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901, and the state has the burden of establishing the chain of custody of a specific piece of

evidence." *State v. Brown*, 107 Ohio App.3d 194, 200, 668 N.E.2d 514 (3d Dist.1995); *see also State v. Hamilton*, 10th Dist. Nos. 10AP-543 & 10AP-544, 2011-Ohio-3305, ¶ 16. "The state's burden, however, is not absolute[.]" *Brown* at 200. "The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. Moreover, breaks in the chain of custody go not to the admissibility of evidence, but to the weight afforded it." (Citation omitted.) *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987). "The state, therefore, is not required 'to negate all possibilities of substitution or tampering.'" *State v. Lenoir*, 5th Dist. No. 10CAA010011, 2010-Ohio-4910, ¶ 19, quoting *State v. Moore*, 47 Ohio App.2d 181, 183, 353 N.E.2d 866 (9th Dist.1973). And "even if the chain of custody is broken, that fact alone will not render the evidence inadmissible." *Lenoir* at ¶ 19.

**{¶16}** Here, the state satisfied its burden of authenticating Exhibit A as the Adderall pill that Corder provided the Informant on January 12, 2008. The Informant testified that she received an Adderall pill from Corder on January 12, 2008, and she testified that Exhibit A appeared to be the same pill she received from Corder. Det. Smithberger also testified that the Informant gave the Adderall pill to her shortly after the Informant received it from Corder. And Det. Smithberger identified Exhibit A as the pill she received from the Informant.

**{¶17}** Additionally, witnesses testified on behalf of the state regarding (1) the procedures used for transferring evidence from the Washington County Sheriff's Office to the Ohio Bureau of Criminal Investigation (hereinafter "BCI") for testing and back again and (2) the testing of the pill. Deputy Roger Doak, the custodian of the evidence room for the Washington County Sheriff's Office, testified regarding the procedures he

followed in retrieving the pill from the evidence locker and sending it to BCI via certified mail. He also testified that he personally retrieved the pill from BCI, and he stored the pill in the evidence room until it was transferred to the Washington County Prosecutor's Office. Beverly Wiltshire, a forensic scientist, testified that she tested the pill at BCI. Wiltshire also testified regarding the standard procedures used at BCI for receiving evidence, handling evidence, and releasing or returning evidence to the proper individuals.

{¶18} Corder argues the pill should have been excluded from evidence based on (1) the fact that the pill was already broken when Wiltshire retrieved it from the evidence locker at BCI and (2) gaps in testimony regarding the chain of custody. Regarding the damaged nature of the pill, Wiltshire testified that the pill was damaged when she first retrieved it from the evidence locker at BCI. However, Wiltshire also testified that, in other cases, she had received damaged pills that had been transported via mail. Thus, the fact that the pill was in a damaged state when Wiltshire retrieved it from the evidence locker does not necessarily demonstrate that substitution, alteration, or tampering occurred sufficient to undermine authentication of Exhibit A.

{¶19} Furthermore, the alleged gaps in the chain of custody that Corder points to are not sufficient to render Exhibit A improperly authenticated. Corder claims there are "many breaks in the chain of evidence." Appellant's Merit Brief at 12. First, we note that the record contradicts some of the "breaks" in the chain of custody that Corder alleges occurred. For example, Corder claims that "there is no testimony as to where the evidence was held between January 12, 2008 when the confidential informant allegedly received it, and January 14, 2008 when Detective Smithberger placed the item

into the evidence room." *Id.* Det. Smithberger, however, testified that she received the pill from the Informant in the early morning hours of Saturday, January 12, 2008. Next, Det. Smithberger stated that she placed the pill in a separate, locked room inside her office until Monday, January 14, 2008, when she placed it into the evidence locker at the Washington County Sheriff's Office. Additionally, Corder claims that there is "no evidence showing how the evidence was returned to the Washington County Sheriff's Office." *Id.* Deputy Doak testified, however, that he personally retrieved the pill from BCI and secured it until he placed the pill into the evidence locker at the Sheriff's Office.

{¶20} Finally, we note that the state was not required to present the testimony of every individual who might have handled the evidence. *See, e.g.*, *State v. White*, 10th Dist. No. 10AP-34, 2011-Ohio-2364, ¶ 87 ("The state is not required to prove a perfect, unbroken chain of custody for evidence to be admissible."). Instead, the state was required to "'establish that it is reasonably certain that substitutions, alteration or tampering did not occur.'" *Lenoir*, 2010-Ohio-4910, ¶ 19, quoting *Moore*, 47 Ohio App.2d at 183, 353 N.E.2d 866. Furthermore, "[t]estimony by a witness with knowledge 'that a matter is what it is claimed to be' is an acceptable method of authentication. Evid.R. 901(B)(1). Consequently, physical evidence may be admissible pursuant to such testimony even if there is not proof of a perfect chain of custody." *State v. Wolff*, 7th Dist. No. 07 MA 166, 2009-Ohio-7085, ¶ 43. As a result, the fact that the state did not present testimony from every individual who may have handled the pill does not render Exhibit A inadmissible.

{¶21} The state presented testimony regarding either the actual handling of the pill or the procedures used in transporting the pill for each step in the chain of custody.

Additionally, the state's evidence established that it is reasonably certain that substitutions, alteration, or tampering did not occur. And as indicated above, witnesses identified Exhibit A as the Adderall pill the Informant received from Corder. Consequently, we cannot conclude that the trial court abused its discretion when it determined that Exhibit A was properly authenticated and, therefore, admissible.

### B. Manifest Weight of the Evidence

{¶22} We next turn to Corder's manifest-weight-of-the-evidence challenge. When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. *See also State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Id.*, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814 (4th Dist.1995); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶23}** (We also note that "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *See State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.), citing *State v. Pollitt*, 4th Dist. No. 08CA3263, 2010-Ohio-2556, ¶ 14.)

**{¶24}** Corder essentially argues that it was against the weight of the evidence to conclude that Exhibit A was the Adderall pill he allegedly provided to the Informant on January 12, 2008. Therefore, Corder asserts that his conviction for aggravated drug trafficking based on providing the Adderall pill to the Informant should be reversed. We disagree.

**{¶25}** As indicated above, the state presented evidence that Exhibit A was the pill the Informant received from Corder. The state presented testimony that the Informant gave the pill to Det. Smithberger. Witnesses for the state also testified regarding how the pill was transported from the Washington County Sheriff's Office to BCI for testing. Wiltshire testified that she tested the pill. According to Wiltshire, the broken shell was consistent with the shell of an Adderall pill. Additionally, Wiltshire testified that the substance that was in the evidence bag (other than the pill's broken shell) tested positive for amphetamine, which is both a schedule II substance and an ingredient in Adderall. Thus, there was evidence that Exhibit A (1) was Adderall, a schedule II substance, and (2) was the pill Corder provided to the Informant on January 12, 2008. "The jury, sitting as the trier of fact, [was] free to believe all, part or none of the testimony of any witness who appear[ed] before it." *State v. Daniels*, 4th Dist. No. 11CA3423, 2011-Ohio-5603, ¶ 23. Apparently, the jury believed the testimony of the

state's witnesses, and we cannot say that the jury lost its way in doing so.  Thus, Corder's aggravated trafficking conviction based on providing the Informant with an Adderall pill was not against the manifest weight of the evidence.

C.

**{¶26}** Accordingly, for the reasons stated above, we overrule Corder's first assignment of error.

III.

**{¶27}** In his second assignment of error, Corder argues that he suffered from ineffective assistance of counsel based on trial counsel's failure to object regarding the chain of custody issues detailed in Corder's first assignment of error.  Corder asserts that the failure to object forced his first assignment of error into the "plain error paradigm."  Appellant's Merit Brief at 13.

**{¶28}** A criminal defendant has a constitutional right to counsel, which includes the right to the effective assistance from counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *State v. Lytle*, 4th Dist. No. 96CA2182, 1997 WL 118069, *5 (Mar. 10, 1997).  "'In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness.'"  *State v. Norman*, 4th Dist. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, ¶ 65, quoting *State v. Countryman*, 4th Dist. No. 08CA12, 2008-Ohio-6700, ¶ 20; *see also State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988).  To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient * * *[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and

(2) "that the deficient performance prejudiced the defense * * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Norman* at ¶ 65. "Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements." *State v. Hall*, 4th Dist. No. 07CA837, 2007-Ohio-6091, ¶ 11. "Deficient performance means performance falling below an objective standard of reasonable representation." *State v. Hutton*, 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 44. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *see also State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

**{¶29}** Corder argues that his trial counsel's failure to object to the chain of custody issues regarding Exhibit A constituted ineffective assistance of counsel. Corder's argument misstates the record. Corder's trial counsel did object to the admissibility of Exhibit A. In doing so, Corder's trial counsel made arguments regarding the alleged breaks in the chain of custody for the pill similar to the arguments Corder now makes on appeal. As a result, Corder cannot show that his trial counsel's performance was deficient. (We also note that, even assuming Corder's trial counsel failed to object as Corder alleges, the objection would have been futile based upon our resolution of Corder's first assignment of error. And the failure to make a futile objection does not constitute deficient performance for an ineffective assistance of counsel claim.

*See State v. Washington*, 5th Dist. No. 2005CA00050, 2006-Ohio-825, ¶ 21.)

Therefore, Corder cannot prevail on his ineffective assistance of counsel claim, and we

overrule Corder's second assignment of error.

IV.

**{¶30}** In his third assignment of error, Corder argues (1) that his sentence was

contrary to law and (2) that the trial court abused its discretion when it found that

Corder's conduct was part of "organized criminal activity."

**{¶31}** "Appellate courts 'apply a two-step approach [to review a sentence]. First,

[we] must examine the sentencing court's compliance with all applicable rules and

statutes in imposing the sentence to determine whether the sentence is clearly and

convincingly contrary to law.'" *State v. Smith*, 4th Dist. No. 08CA6, 2009-Ohio-716, ¶ 8,

quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4

(alterations in original).  If this prong is satisfied, then we review the trial court's decision

under an abuse-of-discretion standard.  *Id.*

**{¶32}** In analyzing whether a sentence is contrary to law, "'[t]he only specific

guideline is that the sentence must be within the statutory range[.]'" *State v. Welch*, 4th

Dist. No. 08CA29, 2009-Ohio-2655, ¶ 7, quoting *State v. Ross*, 4th Dist. No. 08CA872,

2009-Ohio-877, ¶ 10.  Additionally, courts must consider the general guidance factors

set forth in R.C. 2929.11 and 2929.12.  *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-

856, 845 N.E.2d 470, ¶ 42; *Kalish* at ¶ 13; *State v. Davis*, 189 Ohio App.3d 374, 2010-

Ohio-3782, 938 N.E.2d 1043, ¶ 33.

A.

**{¶33}** We will first analyze Corder's argument that the trial court erred by sentencing him to six months in jail. The trial court sentenced Corder to five years of community control for both of his fourth-degree-felony convictions. The trial court also ordered Corder to serve six months in the Washington County Jail for each conviction. (The trial court ordered the six-month jail sentences to be served concurrently.) Corder notes (1) that the trial court found that Corder was amenable to community control and (2) that none of the statutory factors applied that would have mandated prison time for a fourth degree felony. As a result, Corder argues that he "should have been sentenced to community control and not confinement." Appellant's Merit Brief at 16.

**{¶34}** Corder's argument erroneously equates a prison sentence to a term of confinement in a county jail. Community control sanctions are governed by R.C. 2929.15(A)(1), which provides, in relevant part, as follows: "If in sentencing an offender for a felony the court is not required to impose a prison term, a mandatory prison term, or a term of life imprisonment upon the offender, the court may directly impose a sentence that consists of one or more community control sanctions authorized pursuant to [R.C.] 2929.16, 2929.17, or 2929.18[.]" Under R.C. 2929.16, a trial court is authorized to impose a sentence of up to six months of confinement in a county jail as part of a community control sanction. That statute specifically provides, in relevant part, as follows: "[T]he court imposing a sentence for a felony upon an offender who is not required to serve a mandatory prison term may impose any community residential sanction or combination of community residential sanctions under this section. * * * Community residential sanctions include, but are not limited to, * * * a term of up to six months in a jail." R.C. 2929.16(A)(2). *See also State v. Jordan*, 4th Dist. No.

03CA2878, 2004-Ohio-2111, ¶ 14 (noting (1) that "[a]uthorized community control sanctions include a term of up to six months in jail" and (2) that "a jail sentence is not the equivalent of, or part of, a prison term"), quoting *State v. Knight*, 12th Dist. No. CA2001-12-111, 2002-Ohio-4129, ¶¶ 3, 5-6.

**{¶35}** Thus, the trial court in this case was authorized to sentence Corder to six months of confinement in the Washington County Jail as a community control sanction. Therefore, the six-month jail sentence the trial court imposed on Corder is not contrary to law.

B.

**{¶36}** Next, we consider Corder's argument that there is no evidence that he engaged in "organized criminal activity." At Corder's November 22, 2010 resentencing hearing, the trial court considered the seriousness and recidivism factors under R.C. 2929.12. In doing so, the trial court stated, "[s]eriousness factors, committed as part of organized criminal activity; he was trafficking." Nov. 22, 2010 Tr. at 14. Corder asserts that, considering he gave the Informant a single Adderall pill for no compensation, his "alleged activity is not commensurate with a finding of 'organized criminal activity.'" Appellant's Merit Brief at 17.

**{¶37}** Initially, we note that Corder was convicted of drug trafficking in violation of R.C. 2925.03, and "drug trafficking by its very nature is part of an organized criminal activity in that the seller must obtain the drugs from a supplier and is only one link in a long chain of illegal activity." *State v. Martinez*, 6th Dist. No. WD-01-027, 2002 WL 255499, *6 (Feb. 22, 2002). (We also note that, for purposes of drug trafficking in

violation of R.C. 2925.03, the "sale" of a drug includes providing drugs as a "gift."  *See*

*State v. Grier*, 5th Dist. No. 2010 CA 00246, 2011-Ohio-3815, ¶ 22.)

**{¶38}** Furthermore, there is evidence in the record to support the trial court's

organized-criminal-activity finding.  When the Informant visited Corder on October 29,

2007, the Informant asked Corder for some cocaine.  Corder then told her, "[a]ll I've got

is Adderalls."  Trial Tr. at 264.  The Informant stated that Adderall "ain't going to do

nothing for me[,]" and she said, "I want coke, or some morphine pills."  *Id.*  Corder

responded by stating, "Man, there's so much fucking shit going on in Washington

County, got *us* fucking scared.  Big busts going on right now."  (Emphasis added.)  *Id.*

Corder then explained to the Informant that "Adderall is just like coke."  *Id.* at 265.

Later, during that same visit, when the Informant again asked for cocaine, Corder

stated, "I'll make a phone call."  *Id.* at 281.  Corder's statements to the Informant

indicate that his drug activity was conducted with other individuals.  As a result, we

cannot conclude that the trial court abused its discretion when it found that Corder

committed his trafficking offenses as a part of organized criminal activity.

C.

**{¶39}** Because (1) Corder's sentence was not contrary to law and (2) the trial

court did not abuse its discretion when making its sentencing decision, we overrule

Corder's third assignment of error.

**{¶40}** In conclusion, having overruled all of Corder's assignments of error, we

affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, J. and McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY:_____
    Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**