The STATE of Ohio, Appellee,

v.

DAVIS, Appellant.

[Cite as *State v. Davis,* 189 Ohio App.3d 374, 2010-Ohio-3782.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 09CA11.

Decided Aug. 6, 2010.

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Matthew L. O'Leary, Assistant Prosecuting Attorney, for appellee.

Lori Pritchard Clark, for appellant.

KLINE, Judge.

{¶ 1} Zachary A. Davis appeals the judgment of the Pickaway County Court of Common Pleas. After the Pickaway County Juvenile Court transferred Davis's case to the adult court, Davis pleaded no contest to ten felonies and was sentenced to a total of 12 years in prison. On appeal, Davis initially contends that the juvenile court abused its discretion by transferring jurisdiction of his case to the adult court. Because the juvenile court acted rationally, and because the record supports the juvenile court's decision, we disagree. Next, Davis contends that the trial court erred in imposing its sentence. We disagree. First, Davis's total combined sentence is not clearly and convincingly contrary to law. And second, we find that the trial court did not abuse its discretion in imposing

Davis's total combined sentence. Accordingly, we overrule Davis's assignments of error and affirm the judgment of the trial court.

## I

{¶ 2} We will present the facts of this case in a chronological order. Therefore, we start by briefly outlining Davis's history in the juvenile justice system. In April 2005, Davis was first placed on probation for unruliness. In June 2006, he was placed on indefinite probation after a juvenile-delinquency adjudication for receiving stolen property. Approximately two months later, Davis violated his probation. Then, in January 2007, Davis received a juvenile-delinquency adjudication for felony vandalism. As a result, he was sent to the Hocking Valley Community Residential Center. Finally, in March 2008, Davis violated his probation yet again. Davis was still on probation when he committed the crimes in the present case.

{¶ 3} On September 4, 2008, Davis and some of his friends broke into the Little Bear Market in Circleville. They disabled the market's alarm system by cutting the phone lines. Then, while in the market, Davis and his friends caused property damage and stole approximately $3,000 worth of cigarettes, over $400 worth of instant lottery tickets, and various food and beverage items. Hereinafter, we will refer to these crimes as the "Little Bear incident."

{¶ 4} On September 16, 2008, Davis and some of his accomplices from the Little Bear incident broke into a house on Highland Avenue in Circleville. Davis and his friends then attempted to set fire to the house and garage. The house itself suffered minor damage, but the garage was destroyed in the fire. Hereinafter, we will refer to these crimes as the "Highland Avenue incident."

{¶ 5} Finally, very early on September 22, 2008, Davis and some of his accomplices from the above two incidents broke into Mason's Furniture Store in Circleville. Davis and his friends left the store after stealing money and property. A short time later, Davis and his friends apparently realized that they had left incriminating evidence inside the store. So Davis and his friends returned to Mason's Furniture Store, spread accelerants throughout the store, and set the store on fire. The fire completely destroyed the store, which had been in the Mason family for 109 years, and caused approximately $2,000,000 in damages. The fire also caused power outages throughout downtown Circleville and endangered the lives of the firefighters who responded to the scene. Because of its seriousness, officials from both the Ohio Fire Marshall's Office and the Federal Bureau of Alcohol, Tobacco, and Firearms investigated the fire. Hereinafter, we will refer to these crimes as the "Mason's fire incident."

{¶ 6} Investigating officials soon learned of Davis's involvement in those crimes, and, as a result, Davis was charged with 14 felony complaints in the juvenile court. Davis was charged with four felonies related to the Little Bear incident, three felonies related to the Highland Avenue incident, and seven felonies related to the Mason's fire incident.

{¶ 7} Subsequently, the juvenile court entered a notice of potential relinquishment of jurisdiction, wherein the parties were notified that "a hearing will be held * * * to determine whether this Court, pursuant to [R.C. 2152.12,] will relinquish jurisdiction and transfer these cases" to the adult court.

{¶ 8} After a November 28, 2008 hearing, the juvenile court found (1) that Davis was at least 14 years old at the time of the various crimes and (2) that probable cause existed that Davis had committed the crimes in the Little Bear incident, the Highland Avenue incident, and the Mason's fire incident. As a result, the juvenile court ordered an investigation to determine whether Davis was amenable to rehabilitation in the juvenile system. The investigation included a full mental examination by psychologist Dr. Christopher Ray, who prepared a report and testified at a February 5, 2009 hearing. After this second hearing, the juvenile court transferred Davis's entire case to the adult court.

{¶ 9} In the adult court, a Pickaway County grand jury returned a 14-felony-count indictment against Davis. After the state agreed to drop four of the counts, Davis pleaded no contest (with a stipulated finding of guilt) to ten felonies. In relation to the Mason's fire incident, Davis pleaded no contest to (1) aggravated arson, a first-degree felony, in violation of R.C. 2909.02(A)(1), (2) vandalism, a third-degree felony, in violation of R.C. 2909.05(B)(1)(a), (3) disrupting public services, a fourth-degree felony, in violation of R.C. 2909.04(A)(2), (4) theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1), and (5) breaking and entering, a fifth-degree felony, in violation of R.C. 2911.13(A). In relation to the Highland Avenue incident, Davis pleaded no contest to (1) arson, a fourth-degree felony, in violation of R.C. 2909.03(A)(1), and (2) breaking and entering, a fifth-degree felony, in violation of R.C. 2911.13(A). And in relation to the Little Bear incident, Davis pleaded no contest to (1) breaking and entering, a fifth-degree felony, in violation of R.C. 2911.13(A), (2) theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1), and (3) disrupting public services, a fourth-degree felony, in violation of R.C. 2909.04(A)(2).

{¶ 10} The trial court sentenced Davis to a total combined sentence of 12 years in prison. Davis received a total of ten years for the Mason's fire incident, 12 months for the Highland Avenue incident, and 12 months for the Little Bear incident.

{¶ 11} Davis appeals and asserts the following two assignments of error: I. "The juvenile court erred to the prejudice of Defendant and abused its discretion

when it relinquished jurisdiction and transferred the case at bar to the general division of the Pickaway County Common Pleas Court." II. "The trial court erred to the prejudice of Defendant and abused its discretion when it sentenced him to the maximum prison term which was clearly and convincingly contrary to law."

## II

{¶ 12} In his first assignment of error, Davis contends that the juvenile court abused its discretion by transferring jurisdiction of Davis's case to the adult court.

{¶ 13} "Juvenile courts have exclusive jurisdiction over any case involving a person who is alleged to be delinquent for having committed an act when the person was under 18 years old and the act would constitute an offense if committed by an adult." *State v. West,* 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, at ¶ 10, citing R.C. 2152.03 and 2152.10; *State v. Wilson* (1995), 73 Ohio St.3d 40, 43, 652 N.E.2d 196. "It is beyond dispute that the juvenile court has wide latitude to retain or relinquish its jurisdiction over a juvenile." *West* at ¶ 10, citing *State v. Watson* (1989), 47 Ohio St.3d 93, 95, 547 N.E.2d 1181; *State v. Carmichael* (1973), 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568, at paragraphs one and two of the syllabus. An abuse of discretion involves more than an error of judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. "As long as the court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, we cannot conclude that the trial court abused its discretion in deciding whether to transfer jurisdiction." *West* at ¶ 10, citing R.C. 2152.12(B); *Watson* at 95–96; *State v. Douglas* (1985), 20 Ohio St.3d 34, 36–37, 20 OBR 282, 485 N.E.2d 711; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 535–536. "The appropriate test is not whether we would have reached the same result; rather, the question is whether the court abused the discretion that the legislature has provided it." *West* at ¶ 10, citing *Hopfer* at 535. "If there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence." *West* at ¶ 10.

{¶ 14} "Under R.C. 2152.12(B), the juvenile court has discretion to transfer its jurisdiction over a juvenile to the adult court for further proceedings if the juvenile court finds that (1) the juvenile was at least 14 years old at the time of the act charged, (2) probable cause exists that the juvenile committed the act charged, and (3) the juvenile is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require that the juvenile be

subject to adult sanctions." *West* at ¶ 11. Here, as in *West*, the first two requirements of R.C. 2152.12(B) were clearly satisfied. See id. As a result, Davis's appeal focuses on R.C. 2152.12(B)(3).

{¶ 15} "In accordance with R.C. 2152.12(B), the court [in the present case] considered and weighed applicable factors in R.C. 2152.12(D) and (E) to determine whether jurisdiction over the case should be transferred to the adult court. The factors in favor of a transfer are:

"(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

"(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

"(3) The child's relationship with the victim facilitated the act charged.

"(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

"(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

"(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

"(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

"(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

"(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 16} "The factors weighing against a transfer are:

"(1) The victim induced or facilitated the act charged.

"(2) The child acted under provocation in allegedly committing the act charged.

"(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

"(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

"(5) The child previously has not been adjudicated a delinquent child.

"(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

"(7) The child has a mental illness or is a mentally retarded person.

"(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety."

*West,* 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, at ¶ 14, citing R.C. 2152.12(D) and (E).

{¶ 17} The juvenile court found that the factors in R.C. 2152.12(D) outweigh the factors in R.C. 2152.12(E). In its judgment entry transferring jurisdiction, the juvenile court wrote: "Serious economic harm has been suffered by the victims; [Davis] has previously been on probation and community control for prior delinquency and has not been successful in completing court ordered treatment programs; [Davis] is emotionally and psychologically mature enough for the transfer; [Davis] will become eighteen years of age in sixteen months and there is insufficient time to rehabilitate [Davis] within the juvenile system as [Davis] has previously been on community control and provided treatment and rehabilitation through a variety of juvenile programs over the last three years. The court further finds that [Davis] is not amenable to care or rehabilitation within the juvenile system, and that the safety of the community may require that [Davis] be subject to adult sanctions."

{¶ 18} Here, the record supports the juvenile court's decision. First, the Mason's fire incident caused approximately $2,000,000 in damages, which undoubtedly qualifies as serious economic harm under R.C. 2152.12(D)(1). Second, it is undisputed that Davis was on probation when he committed the underlying crimes. See R.C. 2152.12(D)(6). Third, despite numerous encounters with the juvenile justice system, Davis showed no signs of rehabilitation. After he was first placed on probation in April 2005, Davis incurred the following: (1) a June 2006 juvenile-delinquency adjudication for receiving stolen property, (2) an August 2006 probation violation, (3) a January 2007 juvenile-delinquency adjudication for felony vandalism, which resulted in Davis being sent to the Hocking Valley Community Residential Center, (4) a March 2008 probation violation, and (5) the 14–felony–count complaint in the present case. Clearly, the seriousness of Davis's criminal behavior escalated during his three and a half years in the juvenile system. Therefore, the juvenile court acted rationally in finding that the

juvenile system could not provide appropriate rehabilitation for Davis. See R.C. 2152.12(D)(7).

{¶ 19} We further note the seriousness of Davis's crimes, especially the Mason's fire incident. "The more serious the offense, the less amenable the juvenile will be to rehabilitation in the juvenile system." *West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285 at ¶ 24, citing *Watson*, 47 Ohio St.3d at 95, 547 N.E.2d 1181; *State v. Lopez* (1996), 112 Ohio App.3d 659, 662, 679 N.E.2d 1155; *State v. Lallathin*, Noble App. No. 299, 2003-Ohio-3478, 2003 WL 21500290, at ¶ 27. The Mason's fire incident caused $2,000,000 in damages, destroyed a business that had been in the Mason family for generations, placed numerous rescue workers in considerable danger, and caused power outages throughout downtown Circleville. Moreover, the incident was so serious that local, state, *and* federal authorities responded to the crime scene. Here, the seriousness of the Mason's fire incident is strong evidence that Davis is not amenable to rehabilitation in the juvenile justice system.

{¶ 20} Davis argues that the juvenile court erred, in part, because he "could have remained in the care and custody of the Ohio Department of Youth Services until his 21st birthday." Apparently, Davis believes this would have provided enough time for rehabilitation, but we find his argument unconvincing. After spending three and a half years in the juvenile justice system, Davis's behavior escalated from unruliness to a multifelony crime spree. Clearly, all attempts at rehabilitation failed. If he remained in the custody of Youth Services until his 21st birthday, Davis would have spent an additional four and a half years in the juvenile system. Based on Davis's behavior during his first three and a half years in the juvenile system (during which his behavior continually worsened), the juvenile court acted rationally in finding that an additional four and a half years would not be enough time for rehabilitation. See R.C. 2152.12(D)(9).

{¶ 21} Davis bases much of his amenability-to-rehabilitation argument on the psychologist's testimony. As Davis argues, the psychologist "opined that the results of his very thorough evaluation of [Davis] raised the likelihood that he could be rehabilitated through the Ohio Department of Youth Services." However, the juvenile court was not bound by the psychologist's opinion. Rather, the juvenile court was free to assign any weight to the psychologist's opinion that the court deemed appropriate. See *West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, at ¶ 30, citing *Lopez*, 112 Ohio App.3d at 662, 679 N.E.2d 1155; *State v. Whiteside* (1982), 6 Ohio App.3d 30, 36, 6 OBR 140, 452 N.E.2d 332.

{¶ 22} Furthermore, while testifying, the psychologist gave no opinion as to whether the juvenile court should have transferred Davis's case. Indeed, the psychologist testified: "[I]t comes down to really two choices. I think that again,

from a clinical prospective [sic], he would do best either in [the Department of Youth Services] or an adult prison." Thus, the psychologist did not reject the possibility of a transfer. On the contrary, the psychologist stated that an adult prison was one of the options he would recommend for Davis. Accordingly, nothing in the psychologist's testimony indicates that the juvenile court abused its discretion.

{¶ 23} The juvenile court transferred Davis's entire case to adult court, including the charges resulting from the Highland Avenue incident and the Little Bear incident. But Davis argues that transfer of the entire case was inappropriate because, unlike the Mason's fire incident, the Highland Avenue incident and the Little Bear incident did not result in serious economic harm. Here, we cannot find that the juvenile court abused its discretion. Although the Highland Avenue incident and the Little Bear incident may not have caused serious economic harm, the other R.C. 2152.12(D) factors weighing in favor of transfer were still present. Moreover, the Highland Avenue incident and the Little Bear incident were part of Davis's escalating criminal behavior. In just over two weeks, Davis graduated from the fourth- and fifth-degree felonies of the Little Bear incident to a first-degree felony that caused $2,000,000 in damages and jeopardized numerous lives. Because Davis's criminal behavior escalated in seriousness so quickly, it was rational for the juvenile court to conclude that the safety of the community necessitated transferring Davis's entire case to the adult court.

{¶ 24} Davis's remaining arguments focus on the proof offered for the R.C. 2152.12(E) factors weighing against transfer to the adult court. Specifically, Davis argues that he was not the principal actor in the various crimes and, instead, acted under the influence and provocation of his friends. See R.C. 2152.12(E)(2) and (3). Moreover, based on the psychologist's testimony, Davis claims that he has several mental illnesses. See R.C. 2152.12(E)(7). However, in light of the R.C. 2152.12(D) factors that weighed in favor of transfer, we cannot say that the juvenile court abused its discretion in transferring Davis's case to the adult court. Despite the existence of some evidence favorable to Davis, a rational and factual basis supports the juvenile court's decision. Because of Davis's history in the juvenile system, the escalating seriousness of his behavior, and the devastating effects of the Mason's fire incident, we will not second-guess the juvenile court's judgment.

{¶ 25} Accordingly, for the foregoing reasons, we overrule Davis's first assignment of error.

## III

{¶ 26} In his second assignment of error, Davis contends that the trial court erred in imposing its sentence.

{¶ 27} "Appellate courts 'apply a two-step approach [to review a sentence]. First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.' " (Alterations sic.) *State v. Smith,* Pickaway App. No. 08CA6, 2009-Ohio-716, 2009 WL 389966, at ¶ 8, quoting *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4. See also *State v. Voycik,* Washington App. Nos. 08CA33 and 08CA34, 2009-Ohio-3669, 2009 WL 2217749, at ¶ 8.

{¶ 28} Here, we find that Davis's total combined prison sentence is not clearly and convincingly contrary to law. In analyzing whether Davis's sentence is contrary to law, "[t]he only specific guideline is that the sentence must be within the statutory range * * *." *State v. Welch,* Washington App. No. 08CA29, 2009-Ohio-2655, 2009 WL 1600469, at ¶ 7, quoting *State v. Ross,* Adams App. No. 08CA872, 2009-Ohio-877, 2009 WL 485377, at ¶ 10. See also *Voycik,* 2009-Ohio-3669, 2009 WL 2217749, at ¶ 9.

{¶ 29} As regards the Mason's fire incident, Davis pleaded no contest to aggravated arson, a first-degree felony, in violation of R.C. 2909.02(A)(1). "For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years." R.C. 2929.14(A)(1). Thus, Davis's ten-year prison term for aggravated arson falls within the statutory range. Davis received maximum sentences for the other offenses related to the Mason's fire incident, and these other sentences also fall within the relevant statutory ranges. See R.C. 2929.14(A)(3) through (5). Because the trial court ordered Davis to serve all of the Mason's fire offenses concurrently, he received a total of ten years in prison for the five offenses related to the Mason's fire incident. That a result is not clearly and convincingly contrary to law.

{¶ 30} As regards the Highland Avenue incident, Davis pleaded no contest to arson, a fourth-degree felony, in violation of R.C. 2909.03(A)(1). "For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months." R.C. 2929.14(A)(4). Thus, Davis's 12–month prison term for arson falls within the statutory range. Davis received the maximum sentence for the other offense (a fifth-degree felony) related to the Highland Avenue incident, and that 12–month sentence also complies with R.C. 2929.14(A)(5). Because the trial court ordered Davis to serve the two Highland Avenue offenses concurrently with each other (but consecutively to the Mason's fire offenses), he received a total of 12 months in prison for the two offenses related to the Highland Avenue incident. That a result is not clearly and convincingly contrary to law.

{¶ 31} Finally, as regards the Little Bear incident, Davis pleaded no contest to disrupting public services, a fourth-degree felony, in violation of R.C. 2909.04(A)(1). Therefore, Davis's 12–month prison sentence for disrupting public services falls within the statutory range. R.C. 2929.14(A)(4). Davis received maximum sentences for two other fifth-degree felonies related to the Little Bear incident, and these 12-month sentences comply with R.C. 2929.14(A)(5). Because the trial court ordered Davis to serve the three Little Bear offenses concurrently with each other (but consecutively to the Mason's fire offenses and the Highland Avenue offenses), he received a total of 12 months in prison for the three offenses related to the Little Bear incident. That result is not clearly and convincingly contrary to law.

{¶ 32} Based on the foregoing, Davis's total combined sentence of 12 years is within the statutory range for his various crimes.

{¶ 33} Additionally, courts must consider the general guidance factors set forth in R.C. 2929.11 and 2929.12. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 42; *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 13. In imposing Davis's sentence, the trial court stated that it had (1) considered "the principles and purposes of sentencing under [R.C.] 2929.11" and (2) "balanced the seriousness and recidivism factors under [R.C.] 2929.12." Therefore, we find that the trial court complied with all applicable rules and statutes in sentencing Davis. And thus, we find that Davis's sentence is not clearly and convincingly contrary to law.

{¶ 34} Next, we address the second prong of the two-step approach. That is, whether the trial court abused its discretion in imposing Davis's sentence. Again, the term "abuse of discretion" implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Adams,* 62 Ohio St.2d at 157, 16 O.O.3d 169, 404 N.E.2d 144. "In the sentencing context, we review the trial court's selection of the sentence within the permissible statutory range." *Smith,* 2009-Ohio-716, 2009 WL 389966, at ¶ 17, quoting *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 17.

{¶ 35} Sentencing courts "have full discretion to impose a prison sentence within the statutory range and are [not] required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus; see also *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 11. Nevertheless, as mentioned above, courts must still consider the general guidance factors set forth in R.C. 2929.11 and 2929.12.

{¶ 36} Initially, we cannot find an abuse of discretion related to Davis's aggravated arson sentence. Pursuant to R.C. 2929.12(B)(2), a trial court shall

consider whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm." Here, the Mason's fire incident caused approximately $2,000,000 in damage, which undoubtedly qualifies as serious economic harm. Furthermore, because the victims witnessed the utter destruction of their business – a business their family had spent 109 years building – they also suffered serious psychological harm. For these reasons, the trial court did not abuse its discretion by sentencing Davis to the maximum prison term for aggravated arson.

{¶ 37} Furthermore, we cannot find an abuse of discretion in Davis's total combined sentence. Davis received a total of 12 years in prison, including a completely justifiable ten years for aggravated arson. Thus, for his nine other felony convictions, Davis received just two more years in prison. We cannot find an abuse of discretion under these circumstances.

{¶ 38} Accordingly, we overrule Davis's second assignment of error. Having overruled both of Davis's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.