[Cite as *State v. Jones*, 2013-Ohio-3725.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99044**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# SANTANA JONES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-562241

**BEFORE:** Keough, J., Stewart, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 29, 2013

**ATTORNEY FOR APPELLANT**

Sheryl A. Trzaska
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Daniel T. Van
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Santana Jones, appeals from the trial court's judgment finding him guilty of one count of discharge of a firearm on or near prohibited premises, with corresponding firearm specifications, and sentencing him to an aggregate prison term of four years. Jones was originally charged in the juvenile division of the Cuyahoga County common pleas court. After bindover proceedings, the juvenile court transferred jurisdiction to the general division of the common pleas court for prosecution as an adult. Jones contends on appeal that the juvenile court abused its discretion in transferring his case to the common pleas court. Finding no abuse of discretion, we affirm.

## I.  Background

{¶2} In 2012, Jones, who was 16 years old at the time, was charged in juvenile court with three counts of felonious assault in violation of R.C. 2903.11(A)(2) and one count of discharge of a firearm in violation of R.C. 2923.162(A)(3). All counts contained one- and three-year firearm specifications. The state subsequently moved for discretionary transfer under R.C. 2152.12(B) for prosecution as an adult.

{¶3} The juvenile court held a hearing to determine whether there was probable cause to believe that Jones had committed the charged offenses. Upon questioning by the court before the hearing began, Jones stated that he wished to proceed with the hearing, and confirmed that he had rejected the state's plea offer that would have required that he be committed to an Ohio Department of Youth Services ("DYS") facility until he was 21 years of age.

{¶4}  At the hearing, the state's witnesses testified that on the night of February 2, 2012, Jones cocked and pointed a gun at three individuals who were standing with a group of juveniles on a street.  There was a history of prior fights and incidents between Jones and the individuals.  A girl standing next to Jones tried to restrain him and pulled his arm up in the air, at which point the gun went off and everyone ran away.

{¶5}  The juvenile court found that the state had established probable cause. After a hearing to determine whether Jones was amenable to rehabilitation in the juvenile justice system, the juvenile court relinquished jurisdiction and transferred the case to the common pleas court.

{¶6}  Jones was then indicted on three counts of felonious assault with one- and three-year firearm specifications; one count of discharge of a firearm on or near prohibited premises with one- and three-year firearm specifications; and one count of carrying a concealed weapon.  Pursuant to a plea deal, he pled guilty to discharge of a firearm on or near prohibited premises with a three-year firearm specification.  The trial court sentenced him to a one-year prison term, consecutive to the three-year firearm specification, for an aggregate term of four years.  Jones now appeals, challenging the juvenile court's decision to grant discretionary bindover.

## II.  Analysis

{¶7}  Under R.C. 2152.12(B), after a complaint has been filed charging a child with offenses that would be a felony if committed by an adult, a juvenile court may transfer jurisdiction to the general division of the common pleas court if it finds that (1)

the child was 14 years of age or older at the time of the act; (2) there is probable cause that the child committed the act; and (3) the child is not amenable to rehabilitation within the juvenile justice system and, to ensure the safety of the community, the child should be subject to adult sanctions.

{¶8} In making the amenability determination, the juvenile court is instructed to consider statutory factors for and against transferring jurisdiction. R.C. 2152.12(D) lists the factors in favor of transferring jurisdiction, while R.C. 2152.12(E) lists the factors against transfer. In addition to the factors specifically listed in the statute, the juvenile court is instructed to consider "any other relevant factors." R.C. 2152.12(D) and (E). The specific factors the court relied upon to authorize the transfer must appear in the record. R.C. 2152.12(B)(3); *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 3.

{¶9} A juvenile court's amenability determination under R.C. 2152.12 will not be reversed unless the court has abused its discretion. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 39; *In re J.S.*, 8th Dist. Cuyahoga No. 92504, 2009-Ohio-3470, ¶ 31. Thus, we must determine whether the court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

{¶10} Under R.C. 2152.12(D), the court must consider the following factors in favor of transfer:

> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that the rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

**{¶11}** Under R.C. 2152.12(E), the court must also consider the following factors against transfer:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶12} In considering these factors, the juvenile court found that three factors weighed against transfer: (1) Jones had no substance abuse issues; (2) he had not previously been sentenced to a DYS facility; and (3) he behaved appropriately when he was confined for six months in a community control residential facility.

{¶13} Nevertheless, the juvenile court found that the factors in favor of transfer outweighed the factors against transfer. Specifically, the court found that although he was only 16½ years of age at the time of the amenability hearing, Jones had already had 22 cases in the juvenile court, including charges for robbery, attempted robbery, receiving stolen property, rioting, theft, criminal trespass, and aggravated menacing. The court further found that as a result of these charges, Jones had received numerous services through the juvenile court system, including probation services, home detention, and detention in a community control residential facility from February 2011 to August 2011. The court found that although Jones was cooperative and behaved appropriately while in detention, he returned to his bad behavior after he was released.

**{¶14}** The court also found that Jones was on probation at the time of the act for which he was charged, and, in fact, that he had appeared before the same judge less than two weeks before the date of this offense, at which time the court had placed him on probation for another offense. The court further found that Jones appeared, and the report by the juvenile court psychologist confirmed, that he was emotionally, physically, and psychologically mature enough for a transfer. The court also found that Jones had a firearm on his person at the time of the offense and had committed the offense as part of gang activity. Finally, the court found that the victims of the offense had suffered psychological harm because they were in close proximity to the gun when it was discharged. Accordingly, the trial court concluded that Jones was not amenable to rehabilitation in the juvenile justice system and the safety of the community required that he be subject to adult sanctions.

**{¶15}** In his single assignment of error, Jones contends that the trial court abused its discretion in transferring his case to common pleas court because the safety of the community could have been adequately protected if he had remained in the juvenile justice system, there were appropriate resources and enough time for him to be rehabilitated in the juvenile system, and there was evidence that he was amenable to treatment there. Specifically, Jones argues that the juvenile justice system resources had not yet been exhausted because he had not previously been committed to a DYS facility, and the evidence demonstrated that when he received juvenile system services, such as at the community control facility, he was amenable to treatment.

**{¶16}** This argument is not persuasive. The juvenile court was aware that Jones had not previously been committed to a DYS facility but had been in a community control facility for six months. A community control facility is a locked facility similar to a DYS facility that, unlike a DYS facility, allows home visits on weekends. The court found that Jones was well-behaved when he was at the facility but that he could not control his behavior when he was released, a conclusion that was supported by the evidence at the amenability hearing. Rondell Lewis, a placement aftercare coordinator with the juvenile court probation department who worked with Jones during the six months he was at the community control facility, testified at the hearing that Jones "was good in treatment" but always went back to his "bad behavior" when he went back into the community.

**{¶17}** Jones also argues that the juvenile court abused its discretion in transferring jurisdiction because a number of R.C. 2152.12(D) factors in favor of transfer did not apply to this offense. Specifically, Jones contends that the victims of the offense did not suffer physical or psychological harm; any harm to the victims was not exacerbated by their physical or psychological vulnerability or age; there was no evidence that his relationship with the victims facilitated the offense; and, although there was hearsay evidence that he was involved in a gang, there was no evidence that this offense was committed for hire or as part of gang activity.

**{¶18}** We agree that, contrary to the court's finding, there was no evidence the victims suffered psychological harm. Indeed, the court conceded there was no such evidence but stated that "I can only assume that psychological harm came to all three

victims" because they were in close proximity to a weapon that was discharged. Further, we agree that although there was evidence that Jones was in a gang, there was no evidence adduced at the amenability hearing that this offense was related to gang activity.

{¶19} Nevertheless, even discounting those two factors, we do not find that the juvenile court abused its discretion in transferring jurisdiction to the common pleas court. The evidence at the amenability hearing demonstrated that by the time of this offense, Jones had already been charged with numerous juvenile offenses of a very serious nature. He was on probation at the time of this offense and, in fact, had been in court regarding another offense only ten days prior to the date of this offense. This offense involved the use of a firearm and, although no one was hurt, the evidence demonstrated that the gun fired in the air after a girl who was with Jones pushed his arm up. If she had not done so, it is possible that Jones could have faced far more serious charges. The evidence also demonstrated that Jones had been provided with many rehabilitative services in the juvenile court system prior to this offense but had not changed his behavior. In light of this evidence, the juvenile court's finding that Jones was not amenable to rehabilitation in the juvenile justice system was not unreasonable, arbitrary, or unconscionable.

{¶20} Finally, Jones argues that the trial court erred in transferring his case to common pleas court because it would have been better for him to have been retained in the juvenile justice system until he was 21 years of age. Jones contends that he could have had the benefit of education and other programs in the juvenile justice system that he

will not have access to in the adult prison system. He argues further that the juvenile justice system would have been better for him because research has shown that juveniles are at a greater risk of physical and sexual assault and an increased risk of suicide in the adult prison system.

{¶21} These arguments are compelling. However, the record reflects that before the probable cause hearing, Jones specifically rejected the state's plea offer that would have allowed him to remain in DYS custody until he turned age 21. Furthermore, Jones never raised these arguments at the amenability hearing and, accordingly, has waived them. *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 1997-Ohio-71, 679 N.E.2d 706 (arguments raised for the first time on appeal will not be considered by an appellate court).

{¶22} Appellant's assignment of error is therefore overruled.

{¶23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, A.J., CONCURS WITH SEPARATE CONCURRING OPINION;
TIM McCORMACK, J., CONCURS WITH MAJORITY AND SEPARATE CONCURRING OPINION


MELODY J. STEWART, A.J., CONCURRING:

{¶24} The goal of the juvenile justice system is rehabilitation, not punishment. *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 7, citing *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Ordering that a juvenile be tried as an adult and subject to the adult prison system thus carries with it the explicit finding that the juvenile is not amenable to rehabilitation or poses a threat to public safety. *State v. Hanning*, 89 Ohio St.3d 86, 90, 2000-Ohio-436, 728 N.E.2d 1059. This is a difficult decision for a juvenile court judge and at bottom, the court in discretionary bindover cases must take into account the mission of the juvenile justice system and consider not whether the juvenile has been rehabilitated, but whether the juvenile system has done enough to rehabilitate the juvenile.

{¶25} Santana Jones is by all accounts a "young" 16 year old — he is described as physically small for his age and his I.Q. in the mid-70s indicates a learning disability. He has a lengthy history with the juvenile court, but his most serious disposition was a six-month detention in a community control facility in which he exhibited good behavior.

One of the people who testified at the amenability hearing said that Jones did well in rehabilitative settings and that his problems arose upon his release back into his neighborhood.

{¶26} All of this suggests that Jones was not beyond the redemption of the juvenile system. The court appeared to believe this because it indicated its willingness to accept Jones's admission to the complaint and confine him to a DYS facility until his 21st birthday. It is difficult to reconcile on the one hand that the court would agree to a disposition in a DYS facility — with the implicit finding that Jones could be rehabilitated, yet on the other hand order a bindover that found Jones could not be rehabilitated in the juvenile system.

{¶27} The seemingly arbitrary nature of the court's actions might amount to an abuse of discretion were it not for the circumstances of Jones's acts in this case. There is no question that Jones fired a gun with the intent to kill or seriously injure his victims, saved by the quick thinking of a bystander who pushed the gun away. Up until that point, his lengthy history of delinquent conduct did not appear to include a component of physical harm to his victims. This case, however, was a disturbing escalation of his criminal conduct and I am compelled to concede that the court did not act irrationally or arbitrarily in deciding that Jones was no longer amenable to rehabilitation in the juvenile justice system.

{¶28} But sending Jones to the adult prison system means that he is to be punished, not rehabilitated. And to the extent that there is any rehabilitation done in

prison, there should be no mistake that it is secondary to punishment. The placement of an immature child into the adult prison population will forever change Jones, and experience tells us that he will most likely not be changed for the better. This leads to one fundamental question: will the Santana Jones who surfaces from adult prison be better for society than the Santana Jones who would have gone to a DYS facility?