[Cite as *State v. McCutchen*, 2016-Ohio-488.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos.   102381, 102382, and 102383

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TYSHAWN MCCUTCHEN

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeals from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-586377-A, CR-14-586378-A, and CR-14-586379-A

**BEFORE:**   Boyle, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   February 11, 2016

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
BY:   Charlyn Bohland
Assistant Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio   43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   John E. Jackson
         Daniel T. Van
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Tyshawn McCutchen, appeals his convictions. He raises one assignment of error for our review:

> The trial court abused its discretion when it transferred Tyshawn McCutchen's cases for criminal prosecution, in violation of R.C. 2152.12(B); Fifth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Section 10, Ohio Constitution.

{¶2} After review, we find no merit to McCutchen's assignment of error and affirm the judgment of the trial court.

## I. Procedural History and Factual Background

{¶3} In late fall of 2013, McCutchen committed a series of acts that led to the state filing three complaints against him in juvenile court for three separate acts. At the time of the acts, McCutchen was 15 years old. The three cases alleged that McCutchen was a delinquent child because he committed various acts of robbery, aggravated robbery, theft, and kidnapping, with two of the cases involving McCutchen brandishing a firearm during the theft.

{¶4} The state requested that McCutchen's cases be transferred to adult court. The juvenile court held probable cause and amenability hearings on the state's request. The following facts were presented in the probable cause hearing.

{¶5} In November 2014, McCutchen approached a male victim while he was walking home from school with a friend. McCutchen asked the victim to give him "anything" that he had in his pockets. The victim refused. McCutchen again asked the

victim for whatever he had in his pockets, including his cell phone. The victim gave McCutchen his phone. Before he walked away, McCutchen told the victim that if he told police, McCutchen would kill him.

{¶6} In December 2013, in two separate incidents, McCutchen robbed victims at gunpoint. During the first incident, McCutchen and another man approached two female victims as they were leaving a diner sometime after midnight. The two men told the women that they were not going to hurt them, but they just wanted the women's phones. The women said no, after which the men separated the women. The women struggled with the men, until one of the women yelled, "he's got a gun," meaning McCutchen. One of the female victims testified that the man (identified as McCutchen by the other female victim) attacking her "racked the chamber" of his gun, which she explained meant that he put a bullet into the chamber of what looked like a semiautomatic handgun. The women gave the men their purses after seeing the gun, and the men left.

{¶7} In the last case, a male victim testified that he knew McCutchen because they had gone to middle school together. The victim said that as he was walking home from high school, McCutchen came up to him and began talking to him. McCutchen then asked the victim for his cell phone. The victim asked McCutchen why he needed it. The victim refused to give McCutchen his cell phone, but instead, gave McCutchen $50 from his wallet. McCutchen took the victim's money and then went through the victim's pockets, looking for the victim's cell phone. The victim tried to fight him, but then he said that McCutchen "pulled out a gun and cocked it." The victim explained that

McCutchen pulled the gun out of his pants, and pointed it at the ground. The victim said the gun was a "black semiautomatic pistol."

{¶8} After the hearing, the juvenile court found that probable cause existed for the charges in each case, and that McCutchen was not amenable to rehabilitation in the juvenile justice system (the pertinent amenability facts will be set forth infra). The juvenile court then transferred McCutchen's cases to the adult court, where he was subsequently indicted.

{¶9} In adult court, McCutchen pleaded guilty to an amended indictment in each case. In Cuyahoga C.P. No. CR-14-586377-A, McCutchen pleaded guilty to one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, with a three-year firearm specification, and one count of theft, in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor. In Cuyahoga C.P. No. CR-14-586378-A, McCutchen pleaded guilty to attempted robbery, in violation of R.C. 2923.02 and 2911.02(A)(3), a fourth-degree felony. In Cuyahoga C.P. No. CR-14-586379-A, McCutchen pleaded guilty to robbery, in violation of R.C. 2911.02(A)(1), a second-degree felony, with a three-year firearm specification, and carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a fourth-degree felony. As part of his plea, McCutchen agreed to a sentence of ten years in prison, as well as restitution to the victims. As agreed, the trial court sentenced McCutchen to an aggregate ten years in prison, five years of mandatory postrelease control, and restitution to the victims. It is from this judgment that McCutchen appeals, arguing that the juvenile court abused its discretion and violated his

due process rights when it found that he was not amenable to rehabilitation within the juvenile system.

## II. Discretionary Transfer of Jurisdiction

{¶10} Under Ohio's juvenile justice system, there are two types of transfer: mandatory and discretionary. *State v. Mays*, 8th Dist. Cuyahoga No. 100265, 2014-Ohio-3815, ¶ 17, citing *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894.

> "Mandatory transfer removes discretion from judges in the transfer decision in certain situations. * * * Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety."

*Mays* at ¶ 17, quoting *D.W.* at ¶ 10; R.C. 2152.12(A) and (B).

{¶11} In this case, McCutchen was bound over to the adult court pursuant to a discretionary transfer that is governed by Juv.R. 30 and R.C. 2152.12. In instances of discretionary transfer, as in this case,

> the juvenile court is also to determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged. R.C. 2152.10(B) and 2152.12(B)(1) and (2). However, if probable cause exists and the child is eligible by age, the juvenile court must then continue the proceeding for a full investigation. R.C. 2152.12(C) and Juv.R. 30(C). This investigation includes a mental examination of the child, a hearing to determine whether the child is "amenable to care or rehabilitation within the juvenile system" or whether "the safety of the community may require that the child be subject to adult sanctions," and the consideration of 17 other statutory criteria to determine whether a transfer is appropriate. Juv.R. 30(C); R.C. 2152.12(B), (C), (D), and (E).

*In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 12.

**{¶12}** McCutchen does not challenge the trial court's probable cause determination; his assignment of error focuses solely upon the trial court's finding that he is not amenable to rehabilitation within the juvenile justice system.

**{¶13}** In making the amenability determination, the juvenile court must consider whether the applicable factors under R.C. 2152.12(D) indicating that the case should be transferred outweigh the applicable factors under R.C. 2152.12(E) indicating that the case should not be transferred. R.C. 2152.12(B)(3); *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 8. Additionally, aside from the specifically enumerated factors, the juvenile court is instructed to consider "any other relevant factors." *Id*., citing R.C. 2152.12(D) and (E). "The record shall indicate the specific factors that were applicable and that the court weighed." R.C. 2152.12(B)(3). Further, when the trial court determines a transfer is proper, the juvenile court "shall state the reasons for the transfer on the record." R.C. 2152.12(I); *see also* Juv.R. 30(G).

**{¶14}** We review a juvenile court's amenability determination under R.C. 2152.12 pursuant to an abuse of discretion. *Jones* at ¶ 9, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 39. Indeed, a "juvenile court enjoys wide latitude to retain or relinquish jurisdiction." *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989). And given the discretion afforded the juvenile court by the legislature in determining a juvenile's amenability to the juvenile justice system, "[i]f there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence." *State v. West*, 167 Ohio App.3d 598,

2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.).   To find that a trial court abused its discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

### III.    Statutory Factors for Determining Amenability

{¶15} When determining whether to transfer a child to the trial court for adult prosecution, R.C. 2152.12(D) requires that a juvenile court consider the following relevant factors in favor of transfer:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

**{¶16}** Additionally, R.C. 2152.12(E) requires that the juvenile court consider the following relevant factors against a transfer:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

## IV.  Psychological Evaluation

**{¶17}** Dr. Joseph Konieczny evaluated McCutchen prior to the amenability hearing. The following facts come from his psychological report to the court.   McCutchen had a "fairly tumultuous and chaotic upbringing."   When McCutchen was born, he tested

positive for drugs. He was placed in the care of his maternal grandmother until he was six years old. He was then placed with his maternal aunt, where he was physically abused by his uncle. When he was 14 years old, he was placed in the custody of his older sister. In 2013, prior to committing the offenses in these cases, he alternated living with his sister, his brother, and a godmother.

{¶18} McCutchen stated that throughout his "difficult" childhood, he felt that no one loved him or wanted him. McCutchen said that he had feelings of depression "ever since [he] was little." He reported "frequent periods of depression with regard to his family history and lack of involvement in his life by his parents." He experiences "episodes of crying" and "past thoughts of suicide." Although he denied any recent thoughts of suicide, he reported that he had been on "suicide watch" while in detention in the past.

{¶19} McCutchen reported that he joined a gang at age eight, began smoking marijuana daily at age 12, and began drinking alcohol daily at age 13. Despite his substance abuse issues, McCutchen "had never been referred for any treatment or assessment services with regard to his use of alcohol or other drugs."

{¶20} McCutchen reported that he has always had a fewer than average number of friends, and has never been involved in organized groups or community activities. McCutchen admitted that most of his friends have spent time in juvenile and adult jails or prisons. McCutchen reported that although he tried to quit the gang, he was not able to do so.

{¶21} McCutchen also struggled in school. While he maintained average grades throughout middle school, he had many behavioral issues and was suspended often. In September 2013, just before the events occurred that led to the current charges, McCutchen began his tenth grade year in high school. He was expelled, however, soon after school started because he was accused of inappropriately touching a female student.

{¶22} Since October 2012, McCutchen had been adjudicated delinquent four times — for burglary, assault, and twice for criminal trespass. Each time, he was placed on probation, where he performed poorly. He was on probation at the time of the current charges.

{¶23} McCutchen was placed in the juvenile detention center prior to being transferred to adult court. While there, he did well. He did not have any behavioral issues and participated in the school program.

{¶24} Dr. Konieczny diagnosed McCutchen with "Other Specified Depressive Disorder, depressive disorder with insufficient symptoms." Dr. Konieczny also diagnosed McCutchen with "Conduct Disorder, Adolescent Onset Type, Moderate." Dr. Konieczny further opined that McCutchen had a moderate alcohol and marijuana problem.

{¶25} Dr. Konieczny concluded that two factors demonstrated that McCutchen would be responsive to the care and rehabilitative services in the juvenile system. First, he noted that McCutchen had only been placed on probation, but had never "been

committed to a facility at Ohio Department of Youth Services." He further noted that McCutchen was only 16 years, 4 months old, well below the age of majority.

{¶26} Dr. Konieczny concluded that seven factors indicated that McCutchen would not be responsive to the care and rehabilitative services of the juvenile justice system, including (1) his history in the juvenile justice system dating back to age 12, (2) he showed "a very poor adjustment" to probation, (3) he had a lengthy history of poor performance, academically and behaviorally, in school, (4) he had a lengthy history and heavy use of alcohol and marijuana, (5) he had been in a gang since age eight, (6) he was on probation at the time of the current charges, and (7) the current charges involved the use of a firearm, increasing the potential for serious injury or death to any alleged victims.

## V. Juvenile Court's Decisions

{¶27} In all three cases, the juvenile court found that probable cause existed for the charges. It then indicated in all three cases that in making its amenability determination, it considered a "mental exam" by a fully qualified professional, the child's prior juvenile record and prior efforts made to treat and rehabilitate the child, the child's family environment, the child's school record, and the age, and physical and mental condition of the victims in each case. The court also found in each case that the safety of the community may require that the child be subject to adult sanctions. Finally, in all three cases, the juvenile court indicated that it did not make any findings against transfer when considering the relevant factors under R.C. 2152.12(E).

**{¶28}** Regarding the relevant factors under R.C. 2152.12(D) in favor of transfer to adult court in Cuyahoga C.P. No. CR-14-586377-A (DL13118636), the court made the following findings:

> The victim suffered physical or psychological harm, or serious economic harm.
>
> The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of R.C. 2923.12, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.
>
> At the time of the act charged, the child was awaiting a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
>
> The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
>
> The child is emotionally, physically, or psychologically mature enough for the transfer.
>
> There is not sufficient time to rehabilitate the child within the juvenile system.

**{¶29}** Regarding the relevant factors under R.C. 2152.12(D) in favor of transfer to adult court in Cuyahoga C.P. No. CR-14-586378-A (DL14104978), the court made the following findings:

> At the time of the act charged, the child was awaiting a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
>
> The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

The child is emotionally, physically, or psychologically mature enough for the transfer.

There is not sufficient time to rehabilitate the child within the juvenile system.

{¶30} Regarding the relevant factors under R.C. 2152.12(D) in favor of transfer to adult court in Cuyahoga C.P. No. CR-14-586379-A (DL13118182), the court made the following findings:

The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of R.C. 2923.12, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

At the time of the act charged, the child was awaiting a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

The child is emotionally, physically, or psychologically mature enough for the transfer.

There is not sufficient time to rehabilitate the child within the juvenile system.

## VI. Analysis

{¶31} McCutchen contends that the evidence shows that he had an extremely chaotic life, and "acted out to deal with the chaos." McCutchen argues that the juvenile court's decision was unreasonable because Dr. Konieczny evaluated him and believed that two factors demonstrated that he would be responsive to treatment in the juvenile justice system, i.e., that McCutchen had never received intensive intervention from the juvenile

system in his previous cases, and that he had time to be rehabilitated in the juvenile system before he turned 21 years old. He maintains that because he did well while in juvenile detention during the pendency of this case, that it proves that he would do well if he could receive treatment programs while being held in a secure juvenile facility. He further maintains that by the time he is 21 years old, he would benefit from many services that he will not receive in an adult prison.

{¶32} After review, we find no merit to McCutchen's arguments. Although the juvenile court disagreed with the psychologist's two findings against transfer, the law is clear that it is free to do so. *See*, *e.g.*, *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 25 ("As the trier of fact, it was within the court's discretion to reject the psychologist's recommendation."); *State v. Davis*, 189 Ohio App.3d 374, 2010-Ohio-3782, 938 N.E.2d 1043, ¶ 21 (4th Dist.) ("the juvenile court was free to assign any weight to the psychologist's opinion that the court deemed appropriate").

{¶33} Moreover, out of eight statutory factors a court must weigh *against* transfer, only one of the eight is arguably at issue here. The one factor that is possibly relevant in this case against transfer is the eighth statutory factor, i.e., "[t]here is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety."[1] But the trial court obviously found, after considering the psychological report, the child's prior juvenile

---

[1] Although the psychologist made two separate findings against transfer, both of those findings actually only support the eighth statutory factor against transfer.

record and prior efforts made to treat and rehabilitate the child, the child's family environment, the child's school record, and the age, and physical and mental condition of the victims in each case, that even though McCutchen was only 16 years old, there was not sufficient time to rehabilitate him in the juvenile system.

{¶34} Here, the trial court applied the factors under both R.C. 2152.12(D) and (E) and ultimately determined that the factors in favor of transfer outweighed the factors in favor of the juvenile court retaining jurisdiction. Indeed, the psychologist found seven factors in favor of transferring McCutchen to adult court. Based on the record before us, we cannot say that the juvenile court's decision constitutes an abuse of discretion.

{¶35} Accordingly, McCutchen's sole assignment of error is overruled.

{¶36} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR