[Cite as *State v. Collins*, 2018-Ohio-4857.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106545**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**LORENZO COLLINS, JR.**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-618791-A

**BEFORE:** Kilbane, J., E.A. Gallagher, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** December 6, 2018

**ATTORNEY FOR APPELLANT**

Brian R. McGraw
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
John Farley Hirschauer
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Lorenzo Collins, Jr. ("Collins"), appeals from his convictions for aggravated robbery, robbery, and receiving stolen property. Collins challenges the juvenile court's discretionary transfer of this matter to the General Division of the Cuyahoga County Court of Common Pleas ("general division" or "trial court"). For the reasons set forth below, we affirm.

Juvenile Delinquency Complaint

{¶2} In December 2016, Collins was charged in a juvenile delinquency complaint arising out of a series of armed robberies in Cleveland's Tremont neighborhood. The complaint alleged that Collins committed three separate robberies in November 2016 along with his younger brother, L.C. The state contended that the brothers were members of the Heartless Felons gang and committed these robberies with the assistance of gang members. Collins was 15 years old at the time of the offenses. The complaint charged Collins with three counts each of aggravated robbery, robbery, and kidnapping, as well as a single count of grand theft. A few

days after filing the delinquency complaint, the state moved the juvenile court to relinquish its jurisdiction of this matter and transfer Collins to the general division for prosecution.

**{¶3}** At a February 2017 pretrial hearing, Collins's juvenile trial counsel objected to the state's motion. In April 2017, the juvenile court held a probable cause hearing on the state's request for a transfer. At the hearing, Collins waived his right to a probable cause hearing. As a result, the juvenile court determined there was probable cause establishing that Collins committed the charged offenses, that those offenses would constitute a felony if committed by an adult, and that Collins was at least 14 years old at the time of these offenses.

**{¶4}** In June 2017, the juvenile court held an amenability hearing. At this hearing, the juvenile court granted the state's request to incorporate testimony from the amenability hearing related to Collins's codefendant and younger brother, L.C. The juvenile court determined that L.C. was amenable to rehabilitation in the juvenile system and declined to transfer jurisdiction of his case to the general division.

Testimony of Detective Beveridge

**{¶5}** At L.C.'s amenability hearing, Cleveland police Detective Robert Beveridge ("Detective Beveridge") testified that he investigated the robberies and had interviewed both Collins and L.C. as part of his investigation. Detective Beveridge explained that both brothers had confessed to committing the robberies, and Collins had admitted to wielding a handgun during each of the three robberies. Detective Beveridge further explained his belief that the brothers were members of the Heartless Felons gang. Detective Beveridge reviewed records of both Collins and L.C.'s Facebook accounts. Both brothers claimed to be Heartless Felons on their respective Facebook pages.

{¶6}    The juvenile court also heard Detective Beveridge's live testimony regarding his investigation of the armed robberies, including a more detailed discussion of his review of Collins's Facebook records.   Detective Beveridge testified that he had reviewed private Facebook messages between Collins and other Heartless Felons.   Detective Beveridge described a group message between Collins and a number of his Facebook friends discussing a surveillance video still shot depicting one of the armed robberies that was shown on a local television news station.

{¶7}    In the message, Collins's friend, "YodaBlock Ant," _ identified by Detective Beveridge as A.J. _ advised Collins that "[the local news station] got your face showing." Collins replied "I don't know.  I didn't see the video.  [S.R.] did."  Collins's friend, S.R., told the group "[y]'all need to chill" and assured Collins that his face was "not really" visible from the still shot frame shown on the local news.

### Testimony of A.P.

{¶8}    At L.C.'s amenability hearing, A.P. testified that he was standing on the sidewalk in front of a Tremont townhouse _ his place of employment _ while talking on his cell phone. A.P. observed two males walking in the middle of the road.  The men said something to the effect of "hey, what's up?"  A.P. acknowledged them with a head nod.  As the men walked past A.P., he turned because he sensed movement.  The men came up behind him, flanking him on both sides.  One of the men pulled a gun out of his hoodie pocket and demanded A.P. give him his phone.  A.P. complied and gave the man his phone.  Collins confessed to Detective Beveridge to being the individual with the gun.

{¶9} The men then demanded A.P. give them money.  He replied that he did not have any money on him.  The men then asked for A.P.'s keys.  A.P. reached in his pocket and

realized he did not have his keys on him. The men asked A.P. where his keys were, and A.P. replied that they were "in the house." The men asked A.P. who else was in the house. A.P. replied "it's a place of business" and that there were five people inside. The man with the gun demanded that A.P. walk with them. As they walked, the men kept asking A.P. for money and his cell phone pass code, which he gave them. A.P. walked down the street with the men until they got into a passing silver car and left. Before the two men fled, the man with the gun threatened A.P. "don't report this or we'll kill you. We know where you live."

{¶10} A.P. testified that he was "absolutely terrified" during the robbery. He explained he had "never been more scared for my life, never felt my mortality more. I thought I was going to die." As a result of the incident, A.P. is now "afraid to go [to] downtown [Cleveland]." He further explained that when he is in large crowds, his head is "constantly on a swivel," and if someone passes by him, he panics. The incident also affected A.P.'s concentration at work. He explained that he used to be a top performer, but his productivity had drastically decreased since he was robbed.

### Testimony of L.E.

{¶11} At Collins's amenability hearing, the juvenile court also heard the live testimony of a second victim, L.E. L.E. explained that she was driving in the Tremont neighborhood a little after noon when she stopped to run something to the front door of a home. As she got out of her car, she was "rushed" by two men. One of the men presented a firearm and told L.E. to give him her money. Collins confessed to Detective Beveridge to wielding a firearm during the robbery of L.E. The man wedged himself between L.E. and her car door to get behind the steering wheel. The other man ran around the car and entered L.E.'s vehicle through the passenger side.

L.E. grabbed the wheel, and the man in the driver's seat hit the accelerator, causing the vehicle to hit a nearby parked car.

{¶12} L.E. explained that she was "in total shock and pretty terrified." She was unsure of why she grabbed the wheel of her car, explaining "under adrenaline you do weird things." L.E. further explained that she was dragged when the car accelerated, causing her ankle to become badly scraped. After the car crash, the men grabbed L.E.'s purse, computer work bag, and cell phone and ran away.

{¶13} L.E. further testified that the robbery was "a big disruption in her life," causing her to now feel unsafe walking around the neighborhood. L.E.'s car was totaled as a result of the accident. She also lost her computer, which was not insured, and the cash in her wallet.

{¶14} At the conclusion of the state's presentation of evidence, Collins's counsel stipulated to the Ohio Youth Assessment System ("OYAS") and Juv.R. 30 reports. The OYAS report detailed Collins's tumultuous upbringing and unstable family life. Collins's mother had eight children with five different men. Collins's mother and father both have a history of substance abuse and criminal records. Collins's father was convicted and sentenced to 113 years in prison for murder and arson.

{¶15} Cuyahoga County Department of Children and Family Services ("CCDCFS") removed Collins and two of his younger brothers from his mother's custody on two separate occasions _ from 2006 to 2008, and again from 2010 until 2016. Collins and his brothers spent time in foster care and living with a paternal cousin. Permanent custody of two of Collins's older half-siblings were granted to CCDCFS. Another one of Collins's older half-siblings was murdered at age five by that child's father.

**{¶16}** Collins attended 14 different schools, changing schools almost every school year. Collins and L.C. began to use drugs, stopped attending school, and began committing robberies after they began to associate with their older paternal cousin, Tremele Collins. At the amenability hearing, the defense contended that Tremele Collins was the "kingpin" behind the robberies.

**{¶17}** Collins's Juv.R. 30(C) psychological evaluation report noted that Collins had been previously diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD") and Adjustment Disorder with mixed disturbances. Collins was given a full scale IQ test and obtained a result of 82, placing "him in the low average range of intellectual functioning for individuals his age." The report noted that Collins had obtained an IQ score of 79 in a previous test, which "appear[s] to be consistent with this [current] testing." The report also noted that this matter was Collins's first involvement with the juvenile justice system.

**{¶18}** At the conclusion of the amenability hearing, the juvenile court considered the relevant statutory factors on the record, found that Collins was not amenable to rehabilitation in the juvenile system, and ordered Collins transferred to the general division.

General Division

**{¶19}** In June 2017, the juvenile court bound this matter over to the general division. Collins was charged as an adult in an 11-count indictment. The indictment charged Collins with three counts each of aggravated robbery, robbery, and kidnapping, as well as a single count each of attempted grand theft and receiving stolen property. Each count of the indictment carried one- and three-year firearm specifications. Additionally, each count of aggravated robbery, robbery, and kidnapping carried criminal gang activity specifications.

**{¶20}** In October 2017, Collins pled guilty, pursuant to a plea agreement with the state, to a single count of aggravated robbery (Count 1), three counts of robbery (Counts 2, 5, and 10), and a single count of receiving stolen property (Count 8). Counts 1, 2, 5, and 10 each carried a criminal gang activity specification and a one-year firearm specification.

**{¶21}** In November 2017, the trial court sentenced Collins to an aggregate 12 years in prison. At the sentencing hearing, the trial court determined that Counts 1 and 2 (aggravated robbery and robbery, respectively) merge for purposes of sentencing. The state elected to proceed to sentencing on Count 1. On Count 1, the trial court sentenced Collins to a mandatory one-year prison term on the firearm specification, a mandatory three-year prison term on the criminal gang activity specification, and an eight-year prison term on the base charge of aggravated robbery. With regard to Counts 5 and 10, the trial court sentenced Collins to a mandatory one-year prison term on the firearm specification, a mandatory three-year prison term on the criminal gang activity specification, and seven years each on the base counts of robbery. The trial court further sentenced Collins to a one-year prison term for the single count of receiving stolen property _ Count 8. The trial court ordered the one-year firearm specifications and the three-year criminal gang activity specifications on Counts 1, 5, and 10 to all run concurrently to each other. The trial court further ordered all base offenses to run concurrently, for a total aggregate term of 12 years.

**{¶22}** It is from this order that Collins appeals, raising a single assignment of error for our review:

### Assignment of Error One

The Juvenile Court abused its discretion when it determined that [15 year-old] Collins was not amenable to treatment in the juvenile system, in violation of R.C. 2152.12(B), Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10, Ohio Constitution.

Discretionary Bindover

**{¶23}** Collins argues that the juvenile court abused its discretion when it determined that he was not amenable to the care and rehabilitation of the juvenile system and relinquished jurisdiction of this matter to the general division.

**{¶24}** R.C. 2152.10(B) provides for discretionary transfer to the general division of a child alleged to be a juvenile delinquent.

> Unless the child is subject to mandatory transfer, if a child is fourteen years of age or older at the time of the act charged and if the child is charged with an act that would be a felony if committed by an adult, the child is eligible for discretionary transfer to the appropriate court for criminal prosecution. In determining whether to transfer the child for criminal prosecution, the juvenile court shall follow the procedures in [R.C. 2152.12].

**{¶25}** Under R.C. 2152.12(B), after a complaint has been filed charging a child with offenses that would be a felony if committed by an adult, a juvenile court may transfer jurisdiction to the general division of the common pleas court if it finds that: (1) the child was 14 years of age or older at the time of the act; (2) there is probable cause that the child committed the act; and (3) the child is not amenable to rehabilitation within the juvenile justice system, and to ensure the safety of the community, the child should be subject to adult sanctions. *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 7.

**{¶26}** In making this amenability determination, the juvenile court must consider whether the applicable factors in favor of transferring jurisdiction under R.C. 2152.12(D) outweigh the applicable factors against transfer under R.C. 2152.12(E). R.C. 2152.12(B)(3). In addition to the factors specifically listed in the statute, the juvenile court is instructed to consider "any other relevant factors." R.C. 2152.12(D) and (E). The specific factors the juvenile court relied upon

to authorize the transfer must appear in the record. R.C. 2152.12(B)(3); *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 3.

**{¶27}** This court reviews the juvenile court's amenability determination under R.C. 2152.12 for an abuse of discretion. *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 36 (8th Dist.). "Indeed, a 'juvenile court enjoys wide latitude to retain or relinquish jurisdiction.'" *Id*., quoting *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989). We, therefore, will not reverse a juvenile court's decision to relinquish its jurisdiction to the general division unless the decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶28}** As discussed above, the juvenile court must consider whether any of the following factors in favor of transfer under R.C. 2152.12(D) apply:

> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> (3) The child's relationship with the victim facilitated the act charged.
>
> (4) The child allegedly committed the act charged for hire or as part of a gang or other organized criminal activity.
>
> (5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of [R.C. 2923.12], and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.
>
> (6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that the rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶29} The court must also consider whether any of the following factors against transfer under R.C. 2152.12(E) apply:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶30} In the instant case, the juvenile court found four of the nine factors applicable in favor of transferring jurisdiction under R.C. 2152.12(D) and two of the eight factors against transfer under R.C. 2152.12(E). The juvenile court stated on the record and in its journal entry that it found relevant to Collins the following four factors in favor of transfer under R.C. 2152.12(D):

(1) The victim(s) suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

* * *

(4) The child allegedly committed the act charged for hire as part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, and the act charged is not a violation of R.C. 2923.12, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

* * *

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

**{¶31}** Conversely, the juvenile court found relevant to Collins the following two factors against transfer under R.C. 2152.12(E):

(5) The child previously has not been adjudicated a delinquent child.

* * *

(8) There is sufficient time to rehabilitate the child within the juvenile system, and the level of security available in the juvenile system provides a reasonable assurance of public safety.

**{¶32}** Collins does not dispute the trial court's application of the foregoing factors. He does, however, argue that the juvenile court erred in rejecting his defense counsel's "sound arguments" for the application of three additional factors against transfer to the general division. Specifically, Collins argues that the factors under R.C. 2152.12(E)(4), (6) and (7) should also apply.

**{¶33}** As discussed above, R.C. 2152.12(E)(4) provides "[t]he child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that

nature would occur, in allegedly committing the act charged." Collins argues this factor should apply because the physical harm he caused was limited to only one of the three victims. We disagree.

{¶34} The juvenile court heard L.E. testify that Collins wedged himself behind her to enter the driver's seat of her car while brandishing a firearm. Collins proceeded to accelerate the car while L.E. was standing outside the car and hanging onto the steering wheel, causing her to be dragged by the car and resulting in injury to her leg and ankle. Thus, the trial court did not err by declining to find that Collins "did not cause physical harm to any person * * *" since the record demonstrates otherwise.

{¶35} Collins also argues that R.C. 2152.12(E)(6) should apply because he "is not emotionally, physically, or psychologically mature enough for the transfer." *Id*. In support of this argument, Collins cites to his young age and his unstable upbringing as detailed in the OYAS and Juv.R. 30 reports. At the conclusion of the amenability hearing, the juvenile court explained its finding that this factor did not apply, noting that "the summation of the psychological evaluation does not indicate that [Collins] is not emotionally, physically[,] and psychologically mature enough for transfer." We agree. These reports detail Collins's difficult life and tumultuous childhood, but we do not find that they indicate that Collins is not emotionally, physically, or psychologically mature enough to be tried as an adult.

{¶36} Collins also argues that the record supports application of the factor listed under R.C. 2152.12(E)(7) _ "the child has a mental illness or intellectual disability." In support of this argument, Collins notes that the Juv.R. 30 report indicates that he has "a borderline IQ (79) and prior mental health diagnoses." At the conclusion of the amenability hearing, the juvenile court reasoned that the psychological evaluation did not indicate that Collins is "suffering from any

severe mental illness." The juvenile court further found that this factor did not apply because the psychological evaluation did not demonstrate that Collins was intellectually disabled but, rather, "his IQ is at the level of borderline intellectual functioning." Indeed, the Juv.R. 30 report notes that Collins is in "the low average range of intellectual functioning for individuals his age." Accordingly, we do not find the trial court erred in declining to apply the factor listed under R.C. 2152.12(E)(7) to Collins.

**{¶37}** The record demonstrates that the juvenile court carefully considered the factors under R.C. 2152.12(D) and (E), and ultimately determined that the factors in favor of transfer outweighed the factors in favor of the juvenile court retaining jurisdiction. The record supports the juvenile court's resolution of the statutory factors. Therefore, we do not find that the juvenile court's decision to transfer Collins to the general division constitutes an abuse of discretion.

**{¶38}** Accordingly, the sole assignment of error is overruled.

**{¶39}** Judgment affirmed.

Costs waived.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR